

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann
ATTORNEY GENERAL

Honorable T. M. Trimble
First Assistant State Superintendent
Austin, Texas

Dear Sir:

Opinion No. O-1047
Re: Does the Extension Division
of the University of Texas
and State Department of Edu-
cation of Texas possess the
inherent authority to sponsor
the W. P. A. educational pro-
gram as carried on by the
W. P. A. educational program
in Texas.

This will acknowledge receipt of your request of
June 26, 1939, in which communication you have outlined the
Statewide W. P. A. Adult Education Project and the duties of
the State Department of Education of Texas, and the Extension
Division of the University of Texas with relation thereto,
and in which communication you have stated that these two
above named departments have both sponsored the Statewide
Works Progress Administration Adult Education Project since
July 1, 1937.

You have further stated that no money is expended
by the Extension Division of the University of Texas nor by
the State Department of Education with reference to the car-
rying on of this program, but on the other hand they are
merely the co-sponsors of such project and it is through
their respective departments that people are designated to
collaborate with and confer with the officials whoare di-
recting this program.

The question as we understand it to be and the one
that is here answered is as follows:

"Does the Extension Division of the
University of Texas and the Department of
Education of Texas have the inherent author-
ity to act as co-sponsors of this W. P. A.
Adult Educational Program, where the only
action taken by them is that of conferees
by the designated representative of each
department of a few hours and no public
monies of the State of Texas are expended
thereon."

In reaching for the foundation answer to the ques-
tion propounded, it might be well that we looked backward and
start from the beginning and in doing so we go to the founda-

tion of the educational system of Texas, which was originally outlined by Mirabeau B. Lamar, President of the Republic of Texas, in his message to the Congress of the Republic:

"Education is a subject in which every citizen . . . feels a deep and lively concern. It is admitted by all that a cultivated mind is the guardian genius of democracy. It is the only dictator that free men acknowledge, and the only security that free men desire."

Article VII, Section 10, of the Constitution of the State of Texas provides:

"The Legislature shall as soon as practicable establish, organize and provide for the maintenance, support and direction of a University of the first class, to be located by a vote of the people of this State and styled, 'The University of Texas,' for the promotion of literature, and the arts and sciences, including an agricultural, and mechanical department."

And in keeping with the above declaration Article VII, Section 11, of the Constitution of Texas provides:

"In order to enable the Legislature to perform the duties set forth in the foregoing section, it is hereby declared that all land and other property heretofore set apart, and appropriated, for the establishment and maintenance of 'The University of Texas', together with all the proceeds of sales of the same, heretofore made or hereafter to be made, and all grants, donations and appropriations that may hereafter be made by the State of Texas, or from any other source, shall constitute and become a permanent University fund."

The Legislature, by Article 2584 of the Revised Statutes of Texas as now in force in providing for the government of the University of Texas:

"The government of the University of Texas shall be vested in a Board of Regents composed of nine persons. They shall elect a chairman a chairman from their number who shall serve at the pleasure of the Board. The State Treasurer shall be the Treasurer of the University. The Board shall have the right to make and use a common seal and may alter the same at pleasure."

Article 2585 of the Revised Statutes gave to the Board of Regents of the University of Texas the following powers:

"They shall establish the departments of a first class University, determine the officers and professorships, appoint a

other officers, fix their respective sala-
ries; and they shall enact such by-laws,
rules and regulations as may be necessary
for the successful management and government
of the University; they shall have power to
regulate the course of instruction and pre-
scribe, by and with the advice of the pro-
fessors, the books and authorities used in
the several departments, and to confer such
degrees and to grant such diplomas as are usu-
ally conferred and granted by universities."

And the Supreme Court of Texas, by and through its Commission of
Appeals, in the case of Foley v. Benedict as found in 55 S. W.
(2) 805, had this to say with reference to the rules of the Board
of Regents:

"Rules of the Board of Regents in the
exercise of the delegated power are of the
same force as the statutes, and the Board's
official interpretation of the rules, be-
come a part thereof. The courts will not
interfere with the rules of the Board in
the absence of a clear showing of arbitrary
actions or abuse of authority."

It can be seen that the Legislature intended to
give to the Board of Regents of the University of Texas broad
powers and great discretion and same has been confirmed by
the Supreme Court of Texas in speaking through its Commission
of Appeals in the above cited case.

In 1909 the president of the University of Texas,
seeing the necessity for the creation of a Department of Ex-
tension, made the following report and recommendations to
the Board of Regents of the University of Texas:

"2. EXTENSION. I believe the time
has come when the University should make
a modest start in the direction of extend-
ing its opportunities beyond Austin. The
state is full of energetic young men and
women capable of profiting by university in-
struction, but who are held at their homes
by financial necessity or by family respon-
sibilities. They would be greatly benefitted
by university facilities. And helping them
would do much towards establishing the Uni-
versity in the confidence of the plain people
of the State, especially in rural districts,
which we do not reach as efficiently as we
should. Work in extension would helpfully
supplement the service done by the University
to the school system of the State.

"Part of the cost of extension work
would be defrayed out of fees charged for the
courses taken, and I estimate that an appro-
priation of $5,000 recommended above, which
recommendation I ask to have approved, would
enable the University to make a very modest,

easier to induce the Legislature to support a
department that has been established, and there
is good reason for believing that even in a
year and a half this department would prove
so popular as to enable the Regents to secure
from the next Legislature a sufficient sum to
develop it.

"I give below the estimated expenditures
for various purposes, but ask in view of the
novelty of the undertaking, and of the diffi-
culty of estimating accurately the amounts
needed under the separate heads, that the Presi-
dent be authorized to transfer from one of these
funds to the other in case it should be neces-
sary to do so, keeping, of course, the total
expenditure for this purpose within the $5,000
recommended.

"It will be necessary to draw up a detailed
plan for the operation of the Department of Ex-
tension, if it be established, and I recommend
that the President be authorized to prepare such
a plan, and to put it into effect, with such
amendments as the Chairman of the Board of Re-
gents may deem necessary and desirable. I have
accumulated a great deal of data, but it would
take a long time to set forth the details here.

Table of proposed expenditure:

| | | |
|---|---|---|
| Printing | $1,000.00 | |
| Travelling libraries and debates | 500.00 | |
| Stenographers | 1,000.00 | |
| Instructors | 2,000.00 | |
| Travelling Expenses and office furniture | 500.00 | $5,000.00 |

"The plan in general would be to establish
three departments: teaching through corres-
pondence, lectures by members of the Faculty, and
the preparation of school libraries on request
for those desiring to work up particular subjects,
either for their own information or in con-
nection with debates." - President S. E.
Mezes' report to Board of Regents, June 7,
1909; Vol. C, pp. 462-3, Regents' Minutes.

And in conformity with the recommendation there made, the then
Board of Regents of the University of Texas, on June 7, 1909,
Board of Regents of the University of Texas, on June 7, 1909,
as found in Volume C, page 472 of the Minutes of the Board of
Regents of the University of Texas, made and adopted said re-
commendations by using the following language:

"The accompanying reports of Presi-
dent Mezes was presented by him, which,
with the change indicated, was adopted."

And on October 24, 1909, as found in Volume C, pages 486-487

of the Minutes of the Board of Regents of the University of Texas, the then president of the University of Texas had this to say:

"DEPARTMENT OF EXTENSION. Extension Bulletin No. 1 was received from the printer on September 1st and 6700 copies were immediately mailed. The edition of 7000 is nearly exhausted, and a new edition of the bulletin went to the printer on October 16th. Some 400 requests have been received and 77 registrations have been approved up to date, two having been rejected and 12 being still under consideration. It seems probably that as nearly as can be estimated, between 300 and 400 students will register in the Department of Extension by the end of the session. So far, the courses most largely elected are English, Law, Education, and Mathematics.

"I believe that the new Department fully justifies itself and adds materially to the service of the University to the State, and the appreciation of the University by the State." - From President Mezes' report to the Board of Regents, October 21, 1909; Regents' Minutes, Vol. C. pp. 486-7.

Which report by the president of the University was by the Board of Regents adopted.

And in conformity with the establishment of the Department of Extension of the University of Texas, the Board of Regents of the University, from the general appropriation made for the maintenance of the University each biennium thereafter, to and through the year 1926, took upon themselves the authority to expend part of the general appropriation for the maintenance of this department, and in the fourth biennial appropriation budget prepared by the State Board of Control of the State of Texas to the Chief Executive and 40th Legislature for the biennium beginning September 1, 1927, and ending August 31, 1929, the Board of Control, by virtue of items No. 594 through 599, covered the Division of Extension in detail from the Dean's office down through and including a stenographer.

From that time down to the present, the appropriation for the Extension Division of the University of Texas has been carried along and made a part of the general appropriation for the entire University at each session of the Legislature.

As is found in Volume L, Page 113, of the Minutes of the Board of Regents of the University of Texas, under date of July 3, 1937, the following entry was made:

"WORKS PROGRESS ADMINISTRATION ADULT EDUCATION PROGRAM. — Mr. Calhoun reported that the Works Progress Administration has been financing an adult education program.

In the past the program has been sponsored by the State Superintendent of Public Instruction, but both the Works Progress Administration and Superintendent Woods have expressed a desire to have the Division of Extension of the University act as co-sponsor with the State Superintendent of Public Instruction. Dean T. H. Shelby would be the official representative of the University, and the co-sponsorship would involve no financial obligations to the University. On the recommendation of Dean Shelby and Mr. Calhoun and on motion of Mr. Waggener seconded by Major Parten, the Board voted to authorize the Division of Extension to serve as co-sponsor of the project with the understanding that this would involve no financial obligation to the University and that it would not involve an excessive drain on any of the Extension Division facilities." - Regents' Minutes, July 3, 1937, Vol. L, page 113.

Thus it can be seen that the Department of Extension has grown up as a part of the University of Texas and is at this time, by virtue of these conditions, considered a part and parcel of the institution as a whole and the Board of Regents with reference to the Works Progress Administration Adult Educational Program has taken upon it, as a part of such Extension Division, the sponsorship of such W. P. A. Adult Educational Program.

Article 2655, Revised Statutes of Texas, 1925, provides:

"There shall be elected at each general election, a State Superintendent of Public Instruction, who shall hold his office for a term of two years. The State Superintendent shall take the official oath and shall perform such duties as may be prescribed by law."

Article 2657, Revised Statutes of Texas, provides:

"The State Superintendent shall advise and counsel with the school officer of the counties, cities and towns and school districts as to the best methods of conducting the public schools, and shall be empowered to issue instructions and regulations binding for observance on all officers and teachers in all cases wherein the provisions of the school law may require interpretation in order to carry out the designs expressed therein, ALSO IN CASES THAT MAY ARISE IN WHICH THE LAW HAS NO PROVISION, AND WHERE NECESSITY REQUIRES SOME RULE IN ORDER THAT THERE MAY BE NO HARDSHIP TO INDIVIDUALS, AND NO DELAYS OR INCONVENIENCES IN THE MANAGEMENT OF SCHOOL AFFAIRS." (Capitalization ours)

Thus it can be seen that from a reading of Article

2657 of the Revised Statutes above quoted, that in all cases that may arise in which the law has no provision and where necessities require, some rule may be promulgated by the State Superintendent of Education in order that there may be no hardships on individuals and no delays or inconvenience in the management of school affairs may result.

We therefore hold that the Extension Department of the University of Texas and the State Department of Education are possessed of the legal authority to sponsor the project in question as they are now doing.

Yours very truly

ATTORNEY GENERAL OF TEXAS

BY /s/ George S. Berry
George S. Berry
Assistant

GSB:FL:jrb

APPROVED JULY 19, 1939
/s/ W. F. Moore
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED OPINION COMMITTEE
BY W.R.K., Chairman